UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SERGIO BAZALDUA,<br><br>           Plaintiff,<br>vs.<br><br>BRIAN WILLIAMS, *et al.*,<br><br>           Defendants. | Case No.: 2:19-cv-00475-GMN-DJA<br><br>**ORDER** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 33), filed by Defendants Brian Willams, James T. Cook, and James Dzurenda (collectively, "Defendants"). Plaintiff Sergio Bazaldua ("Plaintiff") filed a Response, (ECF No. 38), and Defendants filed a Reply, (ECF No. 42).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 31). Defendants filed a Response, (ECF No. 37), and Plaintiff filed a Reply, (ECF No. 39).

For the reasons discussed below, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**I.     BACKGROUND**

This case arises from Plaintiff's allegations, pursuant to 42 U.S.C. § 1983, that Defendants violated his Fourth and Eighth Amendment rights while he was incarcerated at High Desert State Prison ("HDSP") with the Nevada Department of Corrections ("NDOC"). (*See generally* Compl., ECF No. 9).  Plaintiff claims that in July 2018, Senior Corrections Officer James T. Cook came to his cell and asked whether he and his cellmate wanted to go to the yard. (*Id.* at 4).  After both said yes, Officer Cook ordered Plaintiff and his cellmate to strip naked in their cell in close proximity to each other. (*Id.*).  Officer Cook then instructed both of

them to: "spread your butt, squat, cough, lift your balls." (*Id.*). Plaintiff claims that Officer Cook's instructions violated prison Administrative Regulation 422, which requires staff to avoid unnecessary force or embarrassment, and Operational Procedure 507, which requires strip searches to be conducted in the shower area. (*Id.* at 4, 7). Plaintiff explains that the strip search was humiliating, embarrassing, and unnecessary. (*Id.* at 4).

Plaintiff filed the present case on March 19, 2019, alleging five causes of action: (1) deliberate indifference in violation of the Eighth Amendment; (2) unreasonable search in violation of the Fourth Amendment; (3) negligence; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. (*Id.*). This Court screened Plaintiff's Complaint, dismissing Plaintiff's Eighth Amendment claims and his claims for negligent and intentional emotional distress. (Screening Order 10:4–12, ECF No. 8). The Court allowed Plaintiff's Fourth Amendment claims to proceed against all Defendants and allowed his negligence claim to proceed against Defendant Cook. (*Id.*). Both Plaintiff and Defendants now move for summary judgment on Plaintiff's remaining claims. (*See generally* Pl.'s Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 31); (Defts.' Mot. Summ. J. ("Defts.' MSJ"), ECF No. 33).

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral*

*Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. **DISCUSSION**

In their Motion for Summary Judgment, Defendants argue that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act. (Defts.' MSJ 3:17–27). Plaintiff's Motion for Summary Judgment argues that he was subjected to an unreasonable strip search in violation of his Fourth Amendment constitutional rights. (Pl.'s MSJ 31:5–15). In contrast, Defendants maintain that NDOC's strip search policies are constitutional. (Defts.'

MSJ 6:1).  However, because the Court finds that Plaintiff failed to exhaust his administrative remedies, it need not address the merits of Plaintiff's remaining claims.[1]

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Further, the PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93.  Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issues." *Griffin v. Arpaio*, 557 F.3d 1117, 1119–20 (9th Cir. 2009).

Courts should decide exhaustion before examining the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014).  The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Id.* at 1169, 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996) ("[T]he respondent . . . must show that domestic remedies exist that the claimant did not use.")).  Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172.  The ultimate burden, however, rests with the defendant. *Id.*  Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

---

[1] If Plaintiff had successfully exhausted his administrative remedies, Defendants admit that a genuine dispute of material fact exists concerning whether a strip search was ever conducted by Officer Cook. (Defts.' Resp. 3:1–5, ECF No. 37).

Defendants' Motion for Summary Judgment includes a copy of the NDOC Administrative Regulation ("AR") 740, entitled "Inmate Grievance Procedure," which catalogs the administrative remedies and associated procedures available to NDOC inmates. (AR 740, Ex. A to App. Defts.' MSJ, ECF No. 34). In order for a plaintiff to exhaust available remedies, AR 740 first requires the inmate to discuss the issue with a caseworker prior to initiating the grievance process. (AR 740.04 at NDOC 007). A plaintiff must then file, in order: (1) an Informal Grievance; (2) a First Level Grievance appealing the Informal Grievance decision to the warden; and (3) a Second Level Grievance, which is decided by the Assistant Director of Operations. (AR 740.05–.07 at NDOC 007–012). "In the event an inmate's claim is deemed inappropriate for review or not within the intended scope of this Regulation, the inmate may appeal that decision only to the next procedural level of review." (AR 740.03(5) at NDOC 006). "An inmate who is dissatisfied with the response to a grievance at any level may appeal the grievance to the next level" within five days after the return of a decision. (AR 740.03(6) at NDOC 006).

In the present case, Plaintiff filed an informal grievance on August 21, 2018, written in Spanish. (Informal Grievance No. 2006-30-70495, Ex. B to App. Defts.' MSJ, ECF No. 34). An English translation of the grievance provides: "On 7/28/18 C/O Cook made me get undressed in front of my cell mate and I want to express that it was something very embarrassing and now I feel embarrassed every time I see my cell mate . . . please put me in another cell." (*Id.*). Defendants "partially granted" Plaintiff's informal grievance and forwarded it to the Inspector General for further review. (*Id.*).[2] The Inspector General's report

---

[2] Plaintiff claims that because Defendants "partially granted" his informal grievance, a reasonable person would believe that the grievance process had concluded. (Pl.'s Resp. 10:13–17, ECF No. 38). *See also* AR 740.03(6)(C) ("[i]f the Grievance is "Granted" at any level, the grievance process is considered complete and the inmate's administrative remedies exhausted"). However, Defendants explain that a partial grant only means that a claim is elevated for investigation by the Inspector General. (Defts.' Reply 8:9–13, ECF No. 42). Further, AR 740.05(2)(B)(2) provides: "A partial granting of a grievance is not to be interpreted as to denote that the request for investigation is granted . . . ." Plaintiff also claims that by the time he received the response to his informal

states that Plaintiff's allegations did "not meet violations of the [Prison Rape Elimination Act ("PREA")] as defined or the standard." (Investigation Detail Report, Ex. C to App. Defts.' MSJ, ECF No. 34). The Inspector General's report further directed Defendants to "have [Plaintiff] notified by [a] staff member who speaks Spanish or use [a] language bank that his allegation against staff for unclothed search was not a violation of the PREA." (*Id.*). Defendants provided Plaintiff's grievance record which shows that Plaintiff never appealed the informal grievance to the First or Second Level, as required for exhaustion under AR 740. (Inmate Grievance History, Ex. D to App. Defts.' MSJ, ECF No. 34). Therefore, Defendants have met their burden to demonstrate that Plaintiff failed to exhaust his available administrative remedies. *Albino*, 747 F.3d at 1172.

Plaintiff argues that administrative remedies were effectively unavailable to him because his primary language is Spanish and he "does not speak, read or write in [E]nglish very well." (Pl.'s Resp. 8:8–10, ECF No. 38). Plaintiff claims that because both the NDOC grievance policy and the response he received to his informal grievance were in English, he could not understand the grievance appeals process. (*Id.* 8:27–9:3). District courts have found that "[a] prisoner's lack of familiarity with English may excuse a failure to exhaust administrative remedies where the prisoner is given insufficient assistance by prison officials to enable the prisoner to satisfy the prison grievance process." *Lang Vo Tran v. Ill. Dep't of Corr.*, No. 09-302-GPM, 2011 WL 816630, at *8 (S.D. Ill. Mar. 1, 2011). However, failing to seek out language assistance from prison officials in the grievance process "is not an excuse for failing to exhaust administrative remedies." *Id. See also Beltran-Ojeda v. Doe*, No. CV 12-1287-PHX-DGC, 2013 WL 6059242, at *3 (D. Ariz. Nov. 18, 2013) ("[I]f Defendants failed to provide

---

grievance, his cell had been moved, indicating that his grievance was granted. (Pl.'s Resp. 10:13–22). However, since Plaintiff's informal grievance was not granted, this move could not have been a result of the grievance process. In fact, an incident summary report clarifies that Plaintiff was moved because he "was in fear for his safety from his current cell mate," not because he was embarrassed about the alleged strip search. (Incident Summary Report at H-12, Ex. H to App. Pl.'s MSJ, ECF No. 30-1).

any interpreter assistance to Plaintiff when requested . . . it may support a finding that remedies were rendered unavailable.").

In the present case, Defendant Brian Williams explains that while HDSP's operational procedures are only printed in English, the prison will attempt to provide an interpreter upon request. (Deft. Brian Williams' Answers to Pl.'s Requests for Admissions 4:27–5:2, Ex. D to App. Pl.'s MSJ, ECF No. 30).  However, Plaintiff provides no allegations or evidence that he requested translation or interpreter assistance from Defendants to help him through the grievance process, or that Defendants denied him access to requested assistance.  To the contrary, Plaintiff was able to submit his grievance in Spanish and the Inspector General advised that Plaintiff receive a Spanish response. *Cf Beltran-Ojeda*, 2013 WL 6059242, at *3 (finding that remedies may be rendered unavailable when prison officials refuse to accept Spanish grievances).  Further, Defendants provide evidence that Plaintiff has submitted grievances in English and that he has previously identified his primary language as English. (Case Note Printout Report at 2, Ex. A to Defts.' Reply, ECF No. 42-2) (note from February 14, 2019, stating that Plaintiff's "primary language is English"); (Inmate Grievance Report, Ex. B to Defts' Reply, ECF No. 42-3).  *See also Sosa v. Cleaver*, No. 3:03cv1707 (DJS) (TPS), 2005 WL 1205119, at *3 (D. Conn. May 18, 2005) (finding that the lack of a Spanish inmate handbook is not a special circumstance justifying the failure to file a grievance because the plaintiff has used the grievance process and all pleadings have been submitted in English).

Accordingly, because Plaintiff failed to seek out language assistance, his alleged lack of familiarity with English is "no excuse" for failing to exhaust his administrative remedies, and thus, Plaintiff did not meet his burden to demonstrate that administrative remedies were effectively unavailable to him. *See Lang Vo Tran*, WL 816630, at *8.  As such, the Court grants summary judgement in favor of Defendants.

//

IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 33), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Take Judicial Notice, (ECF No. 44), and Plaintiff's Motion to Request Case Summary, (ECF No. 46), are **DENIED as moot**.

The Clerk of Court shall close this case.

**DATED** this __10__ day of March, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court